UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA CHAVEZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF HAYWARD, et al.,<br><br>　　　　Defendants. | Case No. 14-cv-00470-DMR<br><br>**ORDER ON DEFENDANT'S MOTION FOR LEAVE TO FILE COUNTERCLAIM**<br><br>Re: Dkt. No. 50 |

Before the court is Defendant City of Hayward's motion for leave to file counterclaims. [Docket No. 50.] The court ordered the parties to file supplemental briefing addressing the viability of Defendant's proposed counterclaims, which the parties timely filed. [Docket Nos. 57, 58 (Def.'s Suppl. Brief), 61 (Pl.'s Suppl. Brief), 62 (Def.'s Suppl. Reply).] The court has determined that his matter is appropriate for resolution without oral argument. *See* N.D. Cal. Civ. L.R. 7-1(b). For the following reasons, Defendant's motion is denied.

## I. Factual Background

### A. Plaintiff's Allegations

This lawsuit arises from a January 2013 response to a 911 call at Plaintiff Joshua Chavez's Hayward home. Following an alleged report of a possible domestic disturbance in the apartment Plaintiff shared with his girlfriend, three Hayward police officers were dispatched to the scene. (Compl. ¶ 16.) Upon their arrival, Defendant Officers Manuel Troche, Richard McLeod, and Michael Miller allegedly could hear Plaintiff and his girlfriend arguing inside the apartment. (Compl. ¶ 17.) Officer Troche kicked down the door and the three officers entered. (Compl. ¶ 18.) According to Plaintiff, the officers then threw Plaintiff to the ground, struck him repeatedly, and broke his left arm, fracturing his left elbow and humerus. (Compl. ¶¶ 21-26.)

Plaintiff filed this action in January 2014 against Defendant City of Hayward ("the City"

or "Hayward") and three Hayward police officers, Manuel Troche, Richard McLeod, and Michael Miller (collectively, "the officers"), bringing a § 1983 claim against the officers for excessive force and a § 1983 claim against the City under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), as well as various state law claims.

**B.     Defendant's Proposed Counterclaims**

The City seeks leave to file counterclaims for quantum meruit and violation of California's Bane Act, California Civil Code section 52.1, based upon Chavez's alleged actions prior to the confrontation with the officers. The City alleges that at all relevant times Plaintiff lived with his girlfriend, Alexandra Apfeltzweig, in Hayward, California. On January 19, 2013, Plaintiff was at home waiting for Apfeltzweig to return after a job interview and evening out with a friend in San Francisco. She did not return until after 3:00 a.m., and the City alleges that Plaintiff was "jealous and enraged." (Proposed Counterclaims ¶¶ 6, 7.) Plaintiff and Apfeltzweig began to argue, and the City alleges the argument became "heated and physical." (Proposed Counterclaims ¶ 8.) According to the City, Plaintiff pinned Apfeltzweig down, forcibly covering her mouth to silence her screams and prevent her from calling for help, and threw her against the wall. The City also alleges upon belief that Plaintiff repeatedly struck Apfeltzweig in the face. (Proposed Counterclaims ¶ 8.) The struggle lasted between 20-30 minutes, and Plaintiff's neighbor called 911 twice "reporting that she could hear a woman getting bounced off the walls, crying, and begging a male to stop hitting her and to get off of her." (Proposed Counterclaims ¶ 9.)

The officers responded to the scene in response to the 911 calls. They heard Apfeltzweig's statement "get off of me" along with "sounds of a violent struggle." After knocking and announcing their presence, there was no response, but the officers heard the assault continue, and "[f]earing for the victim's safety," breached the door. (Proposed Counterclaims ¶ 11.) According to the City, Plaintiff attempted to attack an officer and after a brief struggle in which he resisted arrest, the officers took Plaintiff into custody. (Proposed Counterclaims ¶ 11.) Apfeltzweig had visible signs of injury, including a swollen forehead, cheek, and lips, as well as blood on her lip. The City's fire department rendered aid on the scene. (Proposed Counterclaims ¶ 12.) The City alleges that although Apfeltzweig was thankful to have Plaintiff arrested, she refused to testify in

2

1 his criminal prosecution.[1] (Proposed Counterclaims ¶ 13.)

2 The City's quantum meruit claim is based upon its allegation that it was foreseeable that Plaintiff's conduct in battering Apfeltzweig would cause the City's police and fire departments to respond to the scene. (Proposed Counterclaims ¶ 15.) Both departments did respond and provided services, the value of which exceeds $6,000, and Plaintiff has not paid Hayward for the services rendered in response to the "Domestic Violence Incident that he caused." (Proposed Counterclaims ¶¶ 17-19.) The City further alleges that Plaintiff "intentionally interfered with" Apfeltzweig's civil rights by threats, intimidation, and coercion, thus violating the Bane Act, and that the City is entitled to an award of statutory damages and attorney's fees under section 52.1. (Proposed Counterclaims ¶¶ 21-25.)

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 15(a), once a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Amendments to add counterclaims are controlled by Rule 15. *See* Fed. R. Civ. P. 15, advisory committee notes to 2009 Amendments ("Rule 15 [is] the sole rule governing amendment of a pleading to add a counterclaim."). The court should "freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a), and "[t]his policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted). In the absence of an "apparent reason," such as undue delay, bad faith, dilatory motive, prejudice to defendants, futility of the amendments, or repeated failure to cure deficiencies in the complaint by prior amendment, it is an abuse of discretion for a district court to refuse to grant leave to amend a complaint. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir.1999). These factors do not "merit equal weight," and "it is the consideration of prejudice to the opposing party

---

[1] Plaintiff was arrested for violating California Penal Code section 273.5, described in Defendant Troche's police report as "Assault-Domestic Violence/Inflicting Corporal Injury (Spouse or Cohabitant Abuse)," and resisting, delaying, or obstructing an officer pursuant to California Penal Code section 148. (Carlson Decl., March 3, 2015, ¶ 2, Ex. A.) He was ultimately charged with one count of violating section 148, and the charge was eventually dismissed. (Carlson Decl. ¶ 9.)

United States District Court
Northern District of California

that carries the greatest weight." *Eminence Capital*, 316 F.3d at 1052. "Granting leave to amend does not necessarily mean that the underlying allegations ultimately have merit." *FlatWorld Interactives LLC v. Apple Inc.*, 12-CV-01956-WHO, 2013 WL 6406437, at *3 (N.D. Cal. Dec. 6, 2013). "Rather, '[a]bsent prejudice, or a strong showing of any of the remaining [ ] factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend.'" *Id.* (quoting *Eminence Capital*, 316 F.3d at 1052).

### III. Discussion

Plaintiff opposes the City's motion, arguing that the proposed counterclaims are untimely and will cause undue prejudice to Plaintiff. He also argues that the counterclaims are futile. The court will address each argument in turn.

**A.     Timeliness of Amendment & Prejudice to Plaintiff**

Plaintiff argues that leave to amend should be denied due to the City's undue delay. According to Plaintiff, the City's proposed counterclaims arose over two years ago on January 19, 2013, the date of the incident at issue in Plaintiff's complaint. The police reports by Defendants Troche, McLeod, and Miller each indicate that the officers responded to a call of a domestic disturbance, and each claim that they observed visible injuries on Apfelzweig. (Carlson Decl., March 3, 2015, ¶¶ 2-4, Exs. A-C.) Further, another Hayward employee, Officer J. Rubalcava, prepared a police report on or around January 22, 2013 related to the incident along with a citation issued to Plaintiff for violation of California Penal Code section 148. Rubalcava's report contains details of the statement Plaintiff made to the police in the hospital following the incident, in which Plaintiff describes the argument he had with Apfelzweig before the police arrived. (Carlson Decl., ¶ 5, Ex. D.) Therefore, Plaintiff argues that to the extent that the City has viable counterclaims, it was aware of the facts supporting the claims as of January 2013, and its two-year delay in bringing the claims is unjustified. Plaintiff also argues that no new supporting evidence has come to light. Defendants deposed Apfelzweig on January 13, 2015, and Plaintiff argues that her testimony was in conformity with the interview she gave to the police officers on the day of the incident.[2]

---

[2] Plaintiff does not cite to any particular portions of Apfelzweig's deposition supporting this argument.

4

Plaintiff also argues that he will be prejudiced if the court grants the City leave to bring the proposed counterclaims because fact discovery closed on April 24, 2015. [*See* Docket No. 39 (Case Management and Pretrial Order for Jury Trial).] According to Plaintiff, the counterclaims "radically shift" the focus of the litigation from the officers' alleged excessive force to Plaintiff's alleged misconduct prior to the officers' arrival on scene. Plaintiff argues that he will likely have to re-depose the officers and conduct additional written discovery relevant to the new counterclaims. In addition, he argues that since he was never charged with domestic violence after the incident, he did not have to gather evidence to defend himself, and claims that "evidence has gone stale, witness' [sic] memory has faded, and potential exculpatory evidence has been lost or destroyed," prejudicing his ability to defend against these claims. Specifically, Plaintiff contends that photographs of Apfelzweig's alleged injuries "have been lost, stolen, or inadvertently destroyed," and that an audio recording of one of two interviews of Apfelzweig shortly after the incident is also missing. (Carlson Decl. ¶¶ 6, Ex. E (Troche Dep. 132-33), 7.)

In response, the City contends that it has not delayed in bringing these counterclaims, arguing that counterclaims only accrue when a party is sued—here, in January 2014, when Plaintiff brought his complaint, and Plaintiff did not complete service on Defendants until May 2014. [*See* Docket No. 27 (proof of service on Def. McLeod).] It also asserts that it has been diligent, and that prior to seeking leave to bring the proposed counterclaims, it needed to develop facts regarding what happened at Plaintiff's apartment prior to the officers' arrival. The City asserts that Plaintiff refused to produce Apfelzweig's current address in his initial disclosures and Plaintiff's counsel represented Apfelzweig at her deposition; therefore, the City contends that it was unable to interview Apfelzweig until her January 2015 deposition.[3] It also argues that it learned at Apfelzweig's deposition that "the incident was not the innocent event" that Chavez had

---

[3] Hayward attaches a copy of Plaintiff's initial disclosures, in which Apfelzweig's address is listed as the apartment where the January 2013 incident took place. (Brick Decl., March 9, 2015, ¶ 2 Ex. D.) It also claims that Apfelzweig is currently living with Plaintiff's brother, generally citing to her deposition. (Brick Decl. ¶ 3 Ex. E.)

5

described to police.[4]

The court finds that the City did not unreasonably delay in bringing its counterclaims. The City did not answer until June 2014, and it appears that it was unable to interview or depose Apfelzweig until January 2015. Although the parties dispute the meaning and significance of Apfelzweig's testimony at deposition (*see* Def.'s Reply 9), Hayward needed her testimony in order to evaluate its claims, and Plaintiff has not shown that Hayward did not act diligently in pursuing this evidence.

As to Plaintiff's argument that the proposed counterclaims "radically shift" the focus of the litigation, some evidence of Plaintiff's actions towards Apfelzweig before the officers arrived is relevant to the factual inquiry into the reasonableness of the officers' use of force for Plaintiff's excessive force claim. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) (the proper application of the "reasonableness standard" in excessive force claims "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."); *see also Mattos v. Agarano*, 661 F.3d 433, 450 (9th Cir. 2011) (noting "[w]e have observed that '[t]he volatility of situations involving domestic violence' makes them particularly dangerous" in the context of looking at the totality of the circumstances for excessive force claims). Moreover, Plaintiff has been on notice since June 2014 that his allegedly abusive conduct would be at issue, since Hayward pleaded self-defense, defense of others, and justification in its affirmative defenses. It also pleaded affirmative defenses that Plaintiff was guilty of the offenses for which he was arrested, and any related offenses, and that there was probable cause to arrest Plaintiff for a felony. (Answer 9, 10, 14.) The court thus finds that Plaintiff will not be unduly prejudiced if it grants the City leave to bring the counterclaims.

**B.    Futility of Proposed Counterclaims**

    **1.    Statute of Limitations**

---

[4] Hayward does not cite to any particular portions of Apfelzweig's deposition in support of this assertion.

6

Plaintiff argues that the counterclaims are futile because they are barred by the applicable statute of limitations. The statute of limitations governing quantum meruit and Bane Act claims is two years. *See Maglica v. Maglica*, 66 Cal. App. 4th 442, 452 (1998) (noting statute of limitations for quantum meruit claims is two years, citing California Code of Civil Procedure section 339); *Fenters v. Yosemite Chevron*, 761 F. Supp. 2d 957, 995-96 (E.D. Cal. 2010) (holding Bane Act claim subject to two year statute of limitations provided by California Code of Civil Procedure section 335.1). According to Plaintiff, the incident forming the basis for the counterclaims took place on January 19, 2013, but the City did not seek a stipulation to file its counterclaims until January 28, 2015, over two years after the incident. Plaintiff also argues that the proposed counterclaims do not relate back "to any previous filings" in the case "as the Defendant has not previously asserted claims." (Pl.'s Opp'n 7.)

Rule 15(c) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A); *see also Valadez-Lopez v. Chertoff*, 656 F.3d 851, 857-58 (9th Cir. 2011) ("the purpose of Rule 15(c) is to defeat the bar of statutes of limitations . . ." (internal citations and quotation marks omitted)). In California, "the commencement of an action tolls the statute of limitations as to a defendant's then unbarred cause of action against the plaintiff, relating to or depending upon the contract, transaction, matter, happening or accident upon which the action is brought." *Trindade v. Superior Court*, 29 Cal. App. 3d 857, 860 (1973) (quotation marks and citation omitted); *see also Turtle v. Castle Records Inc.*, No. 03-3922 MMC, 2005 WL 1159419, at *1 (N.D. Cal. May 17, 2005) ("Under California law, a counterclaim relates back to the filing of the original complaint," citing *Trindade*). It is undisputed that the City's claims relate to Plaintiff's underlying suit, as they are connected to the events leading up to Plaintiff's encounter with the officer Defendants. Therefore, since the City's proposed claims were timely as of the date Plaintiff filed his complaint (January 31, 2014), the claims are not barred by the applicable statutes of limitation.[5] *See Luna Records Corp., Inc. v. Alvarado*, 232

---

[5] Plaintiff also argues that the proposed counterclaims "are barred by Rule 13(a) as compulsory counterclaims that [Hayward] was required to bring in the answer," citing only Federal Rule of

7

1  Cal. App. 3d 1023, 1027 (the rule in California "has often been stated" as "[t]he filing of the
2  complaint suspend[s] the running of the statute of limitations as to the matters arising out of the
3  transaction set forth therein." (citing *Perkins v. W. Coast Lumber Co.*, 120 Cal. 27, 28 (1898))).

### 2. Failure to State a Claim

The parties did not address the viability of the proposed counterclaims on any other grounds; however, the court was unable to find any quantum meruit or Bane Act claims asserted under similar circumstances. The court therefore ordered the parties to file supplemental briefing addressing 1) the basis and support for the City's proposed quantum meruit claim against Plaintiff for the cost of police and fire services "as requested by Plaintiff's reprehensible conduct" and "rendered in response to the Domestic Violence Incident that he caused"; and 2) the basis and support for its proposed Bane Act claim based on Plaintiff's conduct towards the alleged victim of domestic abuse.

To determine whether an amended claim is futile, the proper test is identical to the one used when considering the sufficiency of a pleading challenged under Federal Rule of Civil Procedure 12(b)(6). *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case where there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable

---

Civil Procedure 13(a) in support. However, nothing in that rule provides that the failure to bring a compulsory counterclaim in the original answer bars a party from later moving under Rule 15(a)(2). *See* Fed. R. Civ. P. 13, advisory committee notes to 2009 Amendments ("An amendment to add a counterclaim will be governed by Rule 15 . . . relation back is governed by the tests that apply to all other pleading amendments.").

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

### a. Quantum Meruit

The City's proposed quantum meruit claim seeks the reasonable value of the police and fire services rendered in responding to the "Domestic Violence Incident" that Plaintiff caused. (Proposed Counterclaims ¶¶ 16-19.) The City alleges that Plaintiff "battered" Apfelzweig, foreseeably causing her "to cry out in pain and in hopes of intervention," and that it was foreseeable that Plaintiff's conduct would cause Hayward's police and fire departments to respond. (Proposed Counterclaims ¶ 15.) It further alleges that "[i]t is only fair that Plaintiff pay the City the cost of the police and fire services rendered in response to the Domestic Violence Incident that he caused." (Proposed Counterclaims ¶ 19.)

"Quantum meruit refers to the well-established principle that the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered. To recover in quantum meruit, a party need not prove the existence of a contract, but it must show the circumstances were such that the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made." *Olsen v. Harbison*, 191 Cal. App. 4th 325, 330 (2010) (internal citations and quotation marks omitted) (quoting *Huskinson & Brown, LLP v. Wolf*, 32 Cal. 4th 453, 458 (2004)). "The underlying idea behind quantum meruit is the law's distaste for unjust enrichment. If one has received a benefit which one may not justly retain, one should restore the aggrieved party to his [or her] former position by return of the thing or its equivalent in money." *E.J. Franks Constr., Inc. v. Sahota*, 226 Cal. App. 4th 1123, 1128 (2014) (quotation marks and citation omitted). "The measure of recovery in quantum meruit is the reasonable value of the services rendered provided they were of direct benefit to the defendant. In other words, quantum meruit is equitable payment for services already rendered." *Id.* (quotation marks and internal citations omitted).

"To recover on a claim for the reasonable value of services under a quantum meruit theory, a plaintiff must establish both that he or she was acting pursuant to either an express or implied request for services from the defendant and that the services rendered were intended to and did

1  benefit the defendant." *Ochs v. PacifiCare of Cal.*, 115 Cal. App. 4th 782, 794 (2004); *see also*
2  *Arrison v. Info. Resources, Inc.*, No. C95-3554[TEH], 1999 WL 551232, at *6 (N.D. Cal. July 16,
3  1999) ("the plaintiff must prove that: (1) the plaintiff has rendered services that benefitted the
4  defendant, and (2) the defendant would be unjustly enriched if the plaintiff was not compensated
5  (citing *In re De Laurentiis Entm't Grp.*, 963 F.2d 1269, 1272 (9th Cir. 1992)).

6        The City's proposed quantum meruit claim fails as a matter of law. The City does not
7  allege that Plaintiff made an "express or implied request for services" from Hayward's police and
8  fire departments. *See Ochs*, 115 Cal. App. 4th at 794; *see also* CACI 371, Common Count: Goods
9  and Services Rendered (plaintiff must prove that defendant "requested, by words or conduct," that
10 plaintiff "[*perform services/deliver goods*] for the benefit of" defendant."). Nor does it allege that
11 its services "benefitted" Plaintiff, for the City itself asserts that Plaintiff "struggle[d]" with the
12 officers and "was taken into custody," and Plaintiff alleges that the officers assaulted him and
13 broke his arm. (Proposed Counterclaims ¶ 11; Compl. ¶¶ 22-24, 26.) In other words, in the
14 absence of any benefit or "enrichment" to Plaintiff, Defendant cannot show that its services
15 unjustly enriched Plaintiff.[6]

16       The City also argues that California has a statutory scheme which allows public entities to
17 recover the cost of police and fire services in certain circumstances. However, none of the
18 Government Code provisions it cites apply in this case. *See* Cal. Gov't Code §§ 53150-53152

---

[6] The City argues that California law does not require an expectation of compensation in order to prove a quantum meruit claim, and that the only limitation is that the services cannot have been "intended to be gratuitous." (Def.'s Suppl. Brief 6-7 (quoting *De Laurentiis*, 963 F.2d at 1273).) However, this argument misapprehends the proposed quantum meruit claim's deficiencies, and is a mis-reading of *De Laurentiis*. In *De Laurentiis*, the Ninth Circuit held that a plaintiff is not required to "expect compensation *from the defendant himself* in order to prove a quantum meruit claim" under California law. 963 F.2d at 1273 (emphasis in original). Instead, a plaintiff may recover under a quantum meruit theory even when he or she expected payment or compensation from a different party, and not from the defendant. *See id.*; *see also Kossian v. Am. Nat'l Ins. Co.*, 254 Cal. App. 2d 647, 649-50 (1967) (allowing recovery under quantum meruit where no implied contract existed and the plaintiff did not expect compensation from the current defendant, but from a third-party). Under California law, the party seeking recovery "must show the circumstances were such that the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made." *Olsen*, 191 Cal. App. 4th at 330 (quotation marks and citations omitted). Here, the City does not (and cannot) allege that Hayward and Plaintiff both expected that Hayward would be compensated by Plaintiff or someone else (other than taxpayers) for responding to the incident.

(liability for expenses of emergency response resulting from negligent operation of motor vehicle, boat or vessel, and civil aircraft); 53153.5 (liability for expenses of emergency response to false police report); 53159 (liability for expenses of emergency response resulting from entering into closed areas or drives on flooded streets with barricades). The City argues that recovery by public entities is not limited to the instances specified in the Government Code provisions, but instead, agencies "are free to pursue recovery costs for all types of emergency responses." (Def.'s Suppl. Brief 7 (citing Cal. Gov't Code § 53158 ("It is not the intent of the Legislature, in enacting this article, to occupy the field of recovery of the expense of an emergency response by a public agency")).) However, the City points to no other state or municipal authority that provides for recovery of the expenses it seeks in this proposed counterclaim, nor does it cite any case supporting its claim for recovery of emergency expenses under a quantum meruit theory involving similar facts.

Accordingly, since the court finds that the City's proposed quantum meruit claim would be futile, leave to amend to add the proposed quantum meruit claim is denied.

### b. Bane Act

The City's proposed Bane Act counterclaim is based upon Plaintiff's alleged actions towards Apfelzweig on the night in question. The City alleges that Plaintiff "intentionally interfered with the Victim's civil rights by threats, intimidation, and coercion," and "acted violently against the victim, assaulted her, battered her, and prevented her from exercising her right to speak, her right to freely move, and her right to be free from physical violence," thus "violat[ing] the victim's statutory and constitutional rights."[7] (Proposed Counterclaims ¶¶ 21, 22.)

The Bane Act authorizes an action for damages, injunctive relief, and other "appropriate equitable relief" against a person or persons who, "whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or

---

[7] The City's proposed counterclaim does not specify which statutory and constitutional rights Plaintiff allegedly violated. In its supplemental briefing, the City clarifies the basis for its Bane Act claim, asserting that Plaintiff's alleged abuse of Apfelzweig violated her rights to be free from bodily harm and violence on account of her sex, and her right to pursue and obtain safety and enjoy life and liberty, rights secured by California Civil Code sections 43, 51.7, 52.4, 1708.6, and article I, section 1 of the California Constitution.

11

coercion, with the exercise or enjoyment by any individual or individuals of rights secured" by the federal or state law and the United States or California constitutions. Cal. Civ. Code § 52.1(a), (b). A Bane Act claim may be brought by "any district attorney or city attorney" seeking "injunctive and other appropriate equitable relief in the name of the people of the State of California," as well as civil penalties. Cal. Civ. Code § 52.1(a). "The word 'interferes' as used in the Bane Act means 'violates.'" *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 883 (2007) (citing *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334 (1998)). "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Id.*

Here, the only parties to this lawsuit are Plaintiff, the City, and the three officer Defendants. Although Hayward's City Attorney represents all of the defendants, the City Attorney himself is not a party, nor is Hayward's District Attorney. Further, it appears the City seeks to bring the proposed Bane Act claim on behalf of itself; it does not bring the claim "in the name of the people of the State of California." *See* Cal. Civ. Code § 52.1(a). Therefore, the proposed counterclaim neither satisfies the plain requirements of the Bane Act nor qualifies as a proper "counterclaim," since it is not a claim for relief that any of the defendants are authorized to bring. *See* Fed. R. Civ. P. 13(a)(1) ("[a] pleading must state as a counterclaim any claim that—at the time of its service—*the pleader* has against an opposing party . . ." (emphasis added)).

Moreover, to the extent Hayward is attempting to add the Hayward City Attorney or District Attorney as a third party to this action, such an action would be procedurally improper. Federal Rule of Civil Procedure 14(a) governs when a defending party—here, the City—may bring in a third party, and provides that "a defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). "[A] third-party claim may be asserted only when [1] the third party's liability is in some way dependant [sic] on the outcome of the main claim and [2] the third party's liability is secondary or derivative." *United States v. One 1977 Mercedes Benz*, 708

12

F.2d 444, 452 (9th Cir. 1983) ("*Mercedes*"). In other words, a defendant bringing a third-party claim must be "attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff." *Stewart v. Am. Int'l Oil & Gas Co.*, 845 F.2d 196, 200 (9th Cir. 1988) (citation omitted). Any Bane Act claim by the Hayward City Attorney or District Attorney against Plaintiff does not satisfy Rule 14(a)(1) because it is a separate, independent claim that does not implicate the City's liability for Plaintiff's section 1983 claims and is not "derivatively based on" Plaintiff's section 1983 claims. *See Mercedes*, 708 F.2d at 452 (third-party claim "must be derivatively based on the original plaintiff's claim").

Therefore, since the City's proposed Bane Act claim is not a proper counterclaim, the court finds that it is futile and denies leave to amend to add the proposed claim.[8]

## IV. Conclusion

For the foregoing reasons, the court denies the City of Hayward's motion for leave to file counterclaims.

**IT IS SO ORDERED.**

Dated: June 8, 2015



Donna M. Ryu
United States Magistrate Judge

---

[8] Since the court finds that the City of Hayward's proposed Bane Act counterclaim is futile, it need not reach the parties' arguments regarding whether a private actor like Plaintiff can be sued under the Bane Act.

13